## JACOBSON v. COX et al.

No. 7099.   Decided February 10, 1949.   (202 P. 2d 714.)

See 37 C. J. S., Frauds, Statute of, sec. 184; 49 Am. Jur. 888. Relation between estoppel and part performance in enforcement of contract not conforming to statute of frauds, note, 117 A. L. R. 939.

*LeRoy H. Cox*, of St. George, for appellant.

*Ellis J. Pickett*, of St. George, for respondents.

LATIMER, Justice.

This action was commenced in the court below by plaintiff (appellant) to quiet title to a tract of land of approximately 8 acres, located in Washington County, State of Utah. As part of the relief sought, appellant sought to enjoin defendants (respondents) from interfering with his use and occupancy of the land. The trial court quieted title in the defendant, William Malin Cox, conditioned upon payment of taxes and a proportionate part of the purchase price paid by appellant's mother to the State of Utah for a much larger tract which included the 8 acres in dispute.

It is unfortunate that this case reached this court without the descriptions of the property being verified and any misdescriptions in the conveyances corrected. We have sought diligently to arrive at some workable solution so as to avoid further hearings on the matter. However, in view of the confusion in the record, this has not been possible.

To assist us in determining the controversy, and for illustrative purposes, we had the State Department of Engineering prepare a diagram showing the location of the land as described in the findings of fact and judgment of the court.

The diagram follows:

NORTH 1/4 CORNER SECTION 23

1/4 SECTION LINE

SECTION LINE.

NE 1/4 NW 1/4
SECTION 23
T 39 S., R. 15 W.,
S. L. M.

NW 1/4 NW 1/4
SECTION 23

S 26° 59' W. 1036 FT.

Point of Beg.

Error of Closing

S 89° 08' W 143 FT.

S 55° 45' W 188 FT.

S 74° 15' W 159 FT.

N 9° 30' W 158 FT.

N 77° 30' W 100 FT.

N 10° 00' N 104 FT.

N 0° 00' N 100 FT.

S 81° 01' W 160 FT.

S 18° 30' W 98 FT.

S 85° 30' W 98 FT.

N 60° 16' W 163 FT.

N 86° 18' W 112 FT.

S 24° 30' W 189 FT.

S 20° 45' W 233 FT.

S 15° 45' W 109 FT.

40 ACRE LINE

40 ACRE LINE

N 22° 45' E 549 FT.

N 78° 30' E 53 FT.

EAST 738'

SCALE 1" = 200 RDS.

If the diagram correctly locates the disputed property with respect to quarter-quarter section lines, then neither party to this action has established a valid claim to the property.

The land supposedly in controversy is the irregular shaped piece indicated on the diagram as parcel "A." This parcel falls entirely within the N½ of the NW¼ of Sec. 23, TS 39 S, R 15 W, SLM. Approximately one half of the property being in the NE¼ of the NW¼, and the other half being in the NW¼ of the NW¼.

To point out specifically wherein the conveyances are apparently defective, we set up the contents of three important documents. The first of these is the patent or conveyance by the State of Utah to Sarah Jacobson, predecessor in interest of the parties to this action. This conveyance describes the property as the NW¼ of the NW¼ and the NE¼ of the NW¼ of Sec. 23, TS 39 S, R 15 W, of the SLM. As the starting point for this decision, we use this description to fix the rights of Sarah Jacobson.

Plaintiff claims title to the land involved by virtue of a warranty deed from Sarah Jacobson to himself. The description of the property as contained in this deed is this:

"The northeast quarter of the northwest one quarter, Section 23, Township 30 S, range 15 W, Salt Lake Meridian."

Being required to accept the description as contained in this record, we find that if plaintiff established an interest in real property it was in land located in a township entirely separate and different from that set forth in the patent to his mother, Sarah Jacobson. Moreover, assuming the original document deals with property in Township 39, there does not appear to have been a conveyance to the plaintiff of the NW¼ of the NW¼ of Sec. 23.

Defendants claim title by virtue of a deed from Caroline Jacobson. While the deed describes the appropriate township, it apparently confuses the quarter-quarter sections.

In the deed the land is described as being substantially eight acres, located by relationship to certain fence lines and a ditch, but the deed shows the property to be in the NW¼ of the NW¼, and the SE¼ of the NW¼ of Sec. 23 TS 39. From the description in this deed, it will be observed that the NE¼ of the NW¼ which contains approximately one half of the disputed strip is not mentioned.

The description of the property which was included in the judgment by the lower court is as follows:

"Beginning at a point south 38°39′ west 980 feet from the north quarter corner of Section 23, Township 39 South, Range 15 West, Salt Lake Meridian, and running thence north 57°40′ west 143 feet; thence south 55°00′ west 148 feet; thence south 74°15′ west 259 feet; thence north 9°20′ west 158 feet; thence north 72°50′ west 100 feet; thence north 10° west 104 feet; thence south 81°20′ west 180 feet; thence north 85°30′ west 86 feet; thence south 28°30′ west 98 feet; thence south 24°40′ west 163 feet; thence south 11°00′ west 112 feet; thence south 24°30′ west 139 feet; thence south 20°45′ west 233 feet; thence south 6°35′ west 109 feet, more or less to the south boundary of the north half of the northwest quarter, Section 23 Township 39 South, Range 15 West, Salt Lake Meridian; thence east along the south boundary of the said north half of the northwest quarter of Section 23, Township 39 South, Range 15 West, 738 feet; thence north 28°30′ east 53 feet; thence north 22°45′ east 549 feet to the place of beginning and containing 7.3 acres of land be the same more or less."

This description was used to plot the property as shown in the illustration, and so we find ourselves attempting to deal with property which as far as this record is concerned has not been conveyed to plaintiff and only partially to defendants. The original documents were not introduced in evidence and the descriptions furnished us are copied in the transcript from the official records of the County Recorder's Office. It is entirely possible that some of the misdescriptions we point out are typographical errors and could be corrected by the court without the necessity of taking any additional evidence. On the other hand, if the descriptions found in the transcprit are those contained in the official

records of the County Recorder's Office, then additional proceedings may be necessary to eventually decide the issues.

Because of our appreciation that these errors may be typographical and because the parties have assumed that the property is correctly described and have made no issue as to the accuracy or inaccuracy of the descriptions, we have elected to dispose of the principal contentions raised by the parties so that if a retrial is deemed appropriate, it will not be necessary to relitigate those issues which can be disposed of in this decision.

Before detailing the facts, we set out the relationship of the parties and their ancestry. James Jacobson, whose death brought about the division of the property, left surviving him as part of his heirs at law, his wife, Sarah Jacobson, and their son, Olaf Jacobson, plaintiff in the present action. Henry Jacobson's wife was C. C. Jacobson, sometimes referred to in this opinion as Caroline Jacobson. Hyrum Jacobson's heirs at law are not particularly involved in this litigation, except that William Malin Cox, defendant, married his daughter. The present parties deraign such title as they have by conveyances from either Sarah Jacobson or Caroline Jacobson.

Sometime prior to November 6, 1919, the three Jacobson brothers, James, Henry and Hyrum, were operating certain properties located in Pine Valley, Utah, under an arrangement, which while not definitely established, appears to have been a partnership arrangement, and we will so designate it for the purpose of this opinion. The death of James Jacobson, some time prior to the sixth day of November, 1919, necessitated the dissolution of the venture, and so the surviving wife and eldest son of James Jacobson, deceased, and the two surviving brothers entered into an agreement whereby the properties previously operated by the partnership were distributed between the two surviving brothers and the heirs of the deceased brother.

The agreement as entered into was executed on November 6, 1919, and is as follows:

"This agreement entered into by and between the Jacobson Brothers, represented by James Jacobson estate, Henry Jacobson, and Hyrum Jacobson, all of Pine Valley, Utah, in final settlement and division of their property as follows:

"Hyrum Jacobson herein agrees to take and does take as his final settlement and full share of all the property and cattle the following:

"The ranch known as the 'Empy Ranch' located about five miles south west of Pine Valley and containing 160 acres; Fifty (50) head of cattle as follows: 20 cows & calves, six two year old stears, eight dry cows, eight two year old heifers, four stears one year old, and four heifers one year old; also the two city lots 1 and four in block 24 Pine Valley survey.

"Henry Jacobson herein agrees to take and does take as his final settlement and full share of the property and cattle the following:

"The piece of land located about one mile east of the Pine Valley meeting house in Reuben Gardners Homestead entry and containing about ten acres, with water; Two city lots 1 and 2 Block 13, with water; also six shares water right in addition to above, making a total of 19 shares of water. Also 156 head of cattle, and two city lots where his home now stands.

"James Jacobson estate is to take and does take as final settlement of the property and cattle the following:

"The piece of land containing two acres, more or less, and located in block one of Pine Valley survey and laying next to the property now owned by Jeter Snow; Two city lots adjacent to the above described land and upon which James Jacobson's old home stood; Piece of land located in lower field about ten rods N. west of block 26 and containing two acres more or less, also two city lots located two blocks west of Pine Valley meeting house where James Jacobson's home now stands; Also 169 head of cattle and all water above 19 shares as above listed.

"It is understood between James Jacobson estate and Henry Jacobson that Henry Jacobson is to have use of leased land up in old field, now under fence, above the Spring Branch Ditch, and James Jacobson estate to have the use of all the leased land below the Spring Branch Ditch while the land below and above the Spring Branch Ditch is leased by James Jacobson estate; or in case same is purchased by either James Jacobson estate or Henry Jacobson, the other party is to be given the privilege of buying the same proportion of said land as he has heretofore been using. James Jacobson estate to have use of land known as Cox Field.

"All the improvements on any land mentioned in this agreement belongs to the party who owns the land as above stated.

"It is further agreed mutually that after each has received his allotment of cattle, that if there are any more than this number; or in other words any cattle above the 375 head distributed as above stated, that the ones over this amount shall be divided equally between James Jacobson estate and Henry Jacobson (one half to each).

"It is further agreed that the ear mark known as the under half crop in each ear shall remain the property of and be used by the James Jacobson estate.

"The brand heretofore used by the Jacobson Brothers (P. J.) shall be discarded by all parties and a new brand shall be used by each party.

"We have each read this agreement over and know the contents contained therein and each of us agree to abide and live up to every part of it by affixing our signatures hereto."

| | |
|---|---|
| | s/ Jas. P. Jacobson |
| s/ Pearl Bennett | s/ Sarah Jacobson |
| witness | For James Jacobson estate |
| | s/ C. C. Jacobson |
| s/ Eula Jacobson | s/ Henry A. Jacobson |
| witness | For Henry Jacobson |
| | s/ Hyrum C. Jacobson by Wm. Cox |
| s/ H. O. Gardner | s/ Louisa Jacobson |
| witness | For Hyrum Jacobson by Wm. Malin Cox |

It will be noted that this agreement provides that Hyrum Jacobson take certain ranch property, certain cattle, and two city lots; that Henry Jacobson take a certain homestead entry, certain water rights, 156 head of cattle, and his home which was located on two city lots, and that the estate of James Jacobson, deceased, take various pieces of real property enumerated in the contract, 19 shares of water stock, and 169 head of cattle. This agreement appears to have disposed of all of the property owned by the partnership. However, there were certain other premises leased which had

been used as part of the partnership venture. The following quoted paragraph is one which was to control the future use and disposition of this property.

"It is understood between James Jacobson estate and Henry Jacobson that Henry Jacobson is to have use of leased land up in old field, now under fence, above the Spring Branch Ditch, and James Jacobson estate to have the use of all the leased land below the Spring Branch Ditch while the land below and above the Spring Branch Ditch is leased by James Jacobson estate; or in case same is purchased by either James Jacobson estate or Henry Jacobson, the other party is to be given the privilege of buying the same proportion of said land as he has heretofore been using. James Jacobson estate to have use of land know as Cox Field."

The record is not entirely satisfactory as to full performance of the 1919 dissolution contract, but the evidence does establish that there was a part performance by all parties and the reasonable inference is that the contract was fully performed, except as to disposing of the leased premises and this by the terms of the contract was not contemplated until some future act had been performed. The distribution of the partnership property was apparently completed immediately following the execution of the contract. And from 1919 until 1944, Caroline Jacobson or her lessee occupied the particular eight acres of property over which these litigants now fight. Restated in a different form, the record shows the following situation existing from the year 1919 until 1945. The three original members of the Jacobson partnership, or their surviving heirs, having agreed upon the distribution of the assets belonging to the partnership venture and all having accepted their division of the property as described in the contract are left with one unperformed provision which deals with the property leased from the state and jointly used by two of the parties. This provision contemplated that the parties who were then using the land should have the right to continue to use so long as the property was leased and if subsequently purchased by either user, the other user was entitled to a conveyance to

his portion of the land providing he paid the proportionate share of the purchase price.

Some time in 1920, Sarah Jacobson, widow of James Jacobson, and one of the original signers of the contract, decided to purchase the leased property and entered into a purchase agreement with the State of Utah. This purchase agreement included the land now in controversy. The original contract of 1919 was not strictly complied with in that Sarah Jacobson, who had been appointed as one of the joint administrators of the estate of James Jacobson, deceased, entered into the contract as an individual and not as a representative of the estate. However, both Sarah Jacobson and plaintiff were fully informed of the provisions of the contract and their subsequent acts were consistent and in keeping with its terms and conditions. The purchase price of the property was apparently paid over a 20 year period as patent was not issued until April, 1940. During the interim from 1920 until 1940 even though Sarah Jacobson was paying for the property there was no charge made for the use or occupancy of the eight acres and no claim made that the conditions prescribed by the original contract had been abrogated or modified. Apparently, the parties considered the ownership to have been fixed by the contract of 1919. Caroline Jacobson and her husband, during the full period, continued to occupy the property, continued to use and realize the benefits from the crops and produce raised thereon, and exhibited all evidence of ownership with out complaint or protest by Sarah Jacobson or other heirs of James Jacobson, deceased, including plaintiff. Henry Jacobson, the husband of Caroline, died in 1940, and after his death she leased the property to various tenants. The leasing arrangement was on a crop basis and Caroline Jacobson received the lessor's share of the crops raised. The lessor-lessee arrangement continued until 1945, and at that time, the property was sold to the defendant, Cox, who remained in possession and used the property without interference until such time as he erected a fence along the north

side of the property. This fence was the precipitating cause of the law suit.

Prior to the time defendant, Cox, purchased the property, he informed plaintiff of his intent to purchase the property and that he had obtained an option from Caroline Jacobson. At this time, plaintiff made no claim to ownership of the property, rather he encouraged the defendant to consummate the deal by suggesting that he would purchase the property from the defendant if a good bargain could be made.

Defendant received his deed to the property from Caroline Jacobson on November 30, 1944, and filed it for record on December 19, of the same year. Plaintiff's deed from his mother, Sarah Jacobson, was obtained April 1, 1945, but was not recorded until April 3, 1946, which was one week prior to the time he instituted this suit.

Plaintiff's principal attack on the judgment of the trial court involves the application of the statute of frauds. His contention is that the statute prohibits the original contract from being declared valid and binding on the original signers. We approach this question by directing attention to the principle that the statute should be used for the purpose of preventing fraud and not as a shield by which fraud can be perpetrated.

Because we believe the doctrine of estoppel is involved in this factual situation, we set forth what we consider reasonable inferences from the testimony of Sarah Jacobson in regards to her ownership of and dealing with the land in question. From her testimony, it is fairly deducible that while she signed the agreement with the State of Utah for the purchase of the land and permitted title to be taken in her name, that all arrangements with the state were made by and through her boys, and particularly the plaintiff in this action; that she did not have any conversation about the land with defendants' predecessors; that she was unfamiliar with its location and the method by which it was being used;

and, that all dealings and transactions connected therewith were handled by her sons.

This evidence is referred to for the purpose of showing that the plaintiff, while not the record owner of the property until a later date, was familiar with the use, occupancy and development of this land over a long period of time, was familiar with the terms of the original contract and knew the parties were relying on its terms to establish their rights. Furthermore, plaintiff's evidence establishes that he was familiar with the original distribution of the property owned by the three brothers and the proposed distribution of the leased land in the event it was purchased from the state. And that he was also familiar with the fact that the state lands were purchased in the name of the mother, which was not consistent with her original agreement.

Accordingly, if an equitable estoppel can be asserted against Sarah Jacobson then this estoppel is effective against plaintiff as he had knowledge of the transaction from its inception in 1919, and participated in all the transactions. Moreover, he was informed by defendant of the intended purchase of the property from Caroline Jacobson and that an option had been obtained from her. Plaintiff, rather than cautioning defendant not to purchase the land because of plaintiff's claimed ownership, encouraged him to deal with Caroline Jacobson.

Plaintiff first attacks the defendants' right to the property because there is no written authority of record showing that Sarah and James P. Jacobson had the right to bind the estate of James Jacobson, deceased, to any contract for the sale or disposal of real property. We need not concern ourselves with this contention for the reason that the estate of James P. Jacobson, deceased, did not acquire title to the land in question. Sarah Jacobson signed and executed the contract as one of the parties and is charged with knowledge of its contents. She purchased the land in her own name with knowledge that members of

another family had a contractual interest thereto and were she a party to this action, she would be estoppel to claim that she could avoid the legal consequences of the contract because she did not have authority to bind the estate. Plaintiff's knowledge of and participation in the various transactions precludes him from asserting rights greater than those running to his mother.

Plaintiff's next attack revolves around the claim that the original contract is unenforcible because the property is not described with certainty and definiteness. We overrule this contention. People who reside in far away rural communities cannot be charged with unreasonable accuracy in describing unsurveyed land. The only reasonable means by which a person can describe property located on a public domain, and which has never been surveyed, is by reference to natural monuments. The original parties to the contract could not have described the land by metes and bounds without going to the expense of running a survey. They apparently considered this unnecessary as all parties knew the exact location of the property involved; had been familiar with, and used it for many years; had described it in documents by reference to fences, natural monuments, size and occupancy. In spite of the misdescriptions in the record, the original owners knew and the present litigants know the location of the piece of property in dispute. The description set out in the contract refers to certain leased land up in the old field, now under fence above the Spring Branch Ditch. This description is definite enough to permit further identification by parol evidence, if necessary. American Jurisprudence Section 348, Volume 49, Statute of Frauds, in dealing with the subject of uncertainty in deeds states:

"A description is sufficient if when read in the light of the circumstances of possession, ownership, situation of the parties, and their relation to each other and to the property, as they were when the negotiations took place and the writing was made, it identifies the property. A description is sufficient, although vague in respect of the boundaries, if it identifies a specific tract of land when ap-

plied to the facts on the surface of the earth, as where a surveyor with the contract in his hands and with the aid of no other means than those provided, could go to the place stated therein and accurately locate the land."

See also the comments of Mr. Justice Frick of this court in the case of *Adams* v. *Manning*, 46 Utah 82, 148 P. 465.

We overrule plaintiff's contention that the contract is too uncertain with respect to amount and time of payment. At the time the contract was executed no one could fix these items with certainty. Neither party was required to purchase, but in event one elected so to do, it was provided that the other should have the privilege of purchasing that portion of the property occupied by them. This provision permitted both the time and amount of payment to be controlled and determined by a future contingency. The parties to the contract controlled the contingency, and, so when Sarah Jacobson purchased the land the respective rights and obligations of the parties could have been determined with reasonable certainty. The values of the respective pieces of property were relative, and while the proportionate amount to be assessed each party could have been determined at any time, the exact amount could not be ascertained until such time as the purchase price was set by the State of Utah. The parties would have had no difficulty in ascertaining the respective values at the time of the purchase had Sarah Jacobson or her heirs been willing. Furthermore, parol testimony of competent witnesses would be admissible to establish the proportionate part of the purchase price that should be assessed against each parcel.

The contract being silent as to the time of payment, Caroline Jacobson, or those claiming through her, would be required to pay cash at any time Sarah Jacobson tendered performance, executed a conveyance or made a demand upon Caroline Jacobson to perform. The record in the case that Caroline Jacobson, at least ten years

prior to the trial of this action, offered to perform her part of the agreement, but that Sarah Jacobson insisted that the settlement of the rights be made at a later date.

Conceding that the contract has some infirmities, we deal with more than an oral contract. We have a written instrument which is attacked because of uncertainties and ambiguities. We are of the opinion that plaintiff, by his acts and conduct is estopped from taking advantage of these deficiencies. To hold otherwise, would permit the statute of frauds to be used by him as a shield to defeat what appears to be a just and equitable cause against him. In 49 American Jurisprudence, Section 581, the following principle in regard to estoppel is set forth:

"Closely allied to the principles of protection against the assertion of the statute of frauds to accomplish a fraud upon the party who has acted in reliance upon an oral contract or the assertion of the statute as a shield to protect fraud is the doctrine of estoppel to assert the statute. It is universally conceded that the doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute of frauds. As is often said, the statute of frauds may be rendered inoperative by an estoppel in pais. Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds. This is based upon the principle established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme. It is called into operation to defeat what would be an unconscionable use of the statute, and guards against the utilization of the statute as a means for defrauding innocent persons who have been induced or permitted to change their position in reliance upon oral agreements within its operation."

Plaintiff and his mother accepted the land, animals, water stock, and all other property given to them under the terms of the original agreement and now seek to avoid the limitations placed upon them. The advantages of the agreement

are accepted, the disadvantages rejected. Sarah Jacobson as part consideration for the original contract agreed that if the estate of James Jacobson, deceased, was to purchase the leased property, then the Henry Jacobson family would be entitled to the privilege of buying the land that it had been, and was, using. With full knowledge of this restriction, Sarah Jacobson purchased the land in her own name. Whether she purchased the property for the estate or for herself is beside the point, as in either event, she is charged with knowledge of the terms of the contract and burdened with liability of carrying out the terms upon which she agreed. Plaintiff appears in the same role as his mother. He acquired the title to the property with full knowledge of the rights of the members of the other families.

We can, of course, point out many technicalities and imperfections as reasons why defendant should not be permitted to succeed. However, if we disregard unimportant matters of form and look to the substance of this litigation, we see a picture of a family venture in which three brothers have built up a fairly substantial business. Upon the death of one, it became necessary to make a distribution of the property and the interested parties agreed on a method of disposal. The property owned outright is received and accepted by the parties and the leasehold interest in the land is reserved for further disposition. The contract is substantially performed and all parties accept the benefits conferred by the contract. One branch of the family claiming through Sarah Jacobson attempts to use the statute of frauds to retain benefits expressly reserved in the contract to another branch. To overrule the trial court on these issues would permit the Sarah Jacobson family to not only gain all of the benefits from the contract but to escape the detriments. In spite of the fact that for some 30 years this family has, by acts and conduct, acquiesced in the provisions of the contract and permitted others to believe it to be in effect, they now seek to have this court say it is invalid. This, we are not prepared to do.

If the title to the property can be cleared, the terms and conditions of the original contract should be enforced. The judgment is reversed and the cause is  remanded to the trial court for further proceedings not inconsistent with this opinion. Each party to bear his costs.

WADE, WOLFE, and McDONOUGH, JJ., concur.

. PRATT, Chief Justice (concurring).

I limit my concurrence to that part of the prevailing opinion holding the record to be in a state of confusion, and returning it for such proceedings as are necessary to synchronize descriptions with issues and parties litigant. As the record now stands, it is impossible of solution.