David M. STAUFFER and Connie A. Stauffer, Plaintiffs and Appellants and Cross Respondents,

v.

Russell CALL and Velma Call, and Sunset Canyon Corporation, Defendants and Respondents and Cross Appellants.

No. 15468.

Supreme Court of Utah.

Jan. 9, 1979.

Willard R. Bishop of Morris & Bishop, Cedar City, for plaintiffs and appellants and cross respondents.

Michael D. Hughes of Allen, Thompson, Hughes & Behle, St. George, for defendants and respondents and cross appellants.

ELLETT, Chief Justice:

Appellants (hereafter "buyers") sued for specific performance of a written agreement dated January 2, 1969, whereby they purchased from respondents (hereafter "sellers") 40 acres of land and in addition thereto two houses and surrounding ten acres located in an area of Washington County, State of Utah, known as Anderson Junction. Sellers then owned approximately 400 acres in the area. In accordance with the terms of the agreement, buyers made a $1,000.00 down payment against a $12,000.00 total purchase price, and thereafter paid $100.00 per month until suit was filed on March 7, 1973.

Sellers pleaded that the written agreement was fatally deficient in its description of the real property intended to be sold and that the instrument constituted only a preliminary statement of understanding anticipating a later definition of the tract or tracts to be sold.

The agreement is a uniform real estate contract form which the parties adapted to their purposes. The clause of conveyance in the executed instrument reads as follows:

2. WITNESSETH: That the Seller, for the consideration herein mentioned agrees to sell and convey to buyer, and the buyer for the consideration herein mentioned agrees to purchase the following described real property, situate in the county of *Washington,* State of Utah, to-wit: *Anderson's Junction.* More particularly described as follows: SEE enclosed legal description. Stauffer's to purchase two houses using the natural bounderies [sic], which is approximately 10 acres collectively PLUS approsmately [sic] ⅕ water rights. Call's to retain the fenced natural farm ground on the SE (south side from Interstate Freeway) which is approximately 40 acres PLUS ⅖ water rights. The remaining ground SE of the old highway to be Stauffer's along with the two houses. Stauffers to purchase ½ of all remaining property to be owned as tenents [sic] in common with Call's.

The "enclosed legal description" to which the clause refers is a description of approximately 400 acres owned by sellers, but buyers admitted and circumstances compel the conclusion that the 400 acres was described only to identify the tracts out of which buyers' acreage would be carved.

There was never a dispute about the two houses to which the contract related, and buyers occupied one or more of them on a reasonably continuous basis from April 1969 until judgment was entered. They made, as sellers concede, substantial improvements to the two houses in which they lived. During the four years after execution of the document noted ante, the parties attempted to reach agreements about the description of the land which was sold to the defendants. Buyers and sellers each set forth proposed legal descriptions, but neither would accept the others' designation. Sellers were aware of appellants' occupation and possession of the land and of their improvement of the houses.

The trial court received parol evidence with regard to the intent of the parties in using the language of the contract and the nature of their subsequent communication and conduct. The court ruled the contract unenforceable. It quieted title to the entire tract of 400 acres in the sellers and ordered that all payment made by the buyers be returned with interest thereon.

This Court takes judicial knowledge of the fact that land values in the area increased greatly since the contract was made. By refusing to agree on the exact description of the land sold and in which plaintiffs were placed in possession, the seller could hope for a mighty windfall by selling it at its enhanced value to others.

It is clear that the Stauffers purchased the two houses and the land about them within natural boundaries amounting to approximately ten acres. It is also clear that they purchased all of the land on the south side of the freeway save and except the fenced farm ground amounting to approximately 40 acres together with two fifths of the water rights. It is also clear that the Stauffers purchased one half of all of the remaining property of Call, which was to be held as tenants in common.

The Stauffers moved into the two houses and remodeled them so as to be fit for habitation and paid almost one half of the agreed price including interest before the defendants refused to comply with the agreement. The natural boundaries consisted of stone walls and wire fences; and the court should have compelled specific performance of the contract. The taking of possession and the payment of $6,400 towards the full price takes the matter out of the statute of frauds. The court should take testimony as to what was said and done and then decide what was the legal description of the land included in the agreement to purchase. He should order a conveyance of that land to the Stauffers upon the payment of the balance due pursuant to the written contract.

The judgment is reversed and the case is remanded with directions to the trial court to take such further proceedings as are in accordance with this opinion. Costs are awarded to the appellants.

CROCKETT, MAUGHAN and HALL, JJ., concur.

WILKINS, Justice (dissenting).

I respectfully dissent.

To justify reversal of the judgment in this case, it has been necessary for the majority opinion to make a series of findings of fact which are not only contrary to those of the District Court but also virtually without evidentiary support in the record. The opinion postulates, for example, (1) that the parties *intended* by their contract language to identify the specific acreage to be conveyed or retained by sellers and (2) that the "boundaries" to which the contract language refers actually existed at or before the date of contract execution. There is so little evidentiary support for those positions that buyers did not even argue for them in their brief.

The evidence—including the buyers' testimony—is overwhelming that the parties' intent when they signed the contract was merely to establish the outlines of a transaction they later proposed to negotiate to consummation. So nebulous was her concept of which ten acres were in prospect, in fact, that one buyer, Mrs. Stauffer, prepared or participated in preparation of two strikingly different depictions of that acreage during her occupation of the houses.

The majority finding (referring to the contract's purported "description" of real property to be conveyed or retained) that there *are* natural boundaries by which the ten acres including two houses could be identified is similarly contrary to the evidence. The term "natural," when used with respect to boundaries, means mountains, trees, springs, streams, etc.,[1] and no exhibit or testimony refers to any natural monument. Even if the phrase "natural boundaries" is extended to include existing roads and fences, the ten acres contemplat-

1. 12 Am.Jur.2d, Boundaries, Section 4.

ed by the contract to be eventually conveyed could not be identified by such boundaries. One could extrapolate from such artificial monuments as there were to delineate several different tracts consistent with the contract language.

The majority makes a gratuitous finding that forty acres of fenced farmland to be retained by sellers can be located within the sellers' 400 acre tract and *south* of the interstate freeway. The evidence does not establish that *any* part of the sellers' land lies *south* of the freeway; the freeway runs north-south through the area. The evidence shows there are two fenced areas which might be described as farmland. One contains 18 acres and the other contains 46 acres. The first could hardly have been intended by the parties, and both parties deny they intended the second.

While the instrument on which suit was brought contemplates buyers' acquisition of additional acreage, the heart of the contemplated transaction was the fifty improved or farmable acres to be conveyed or retained in fee. As to the two tracts of which that fifty acres was to be comprised, the undisputed testimony is that a surveyor, with only those clues provided by the contract language, could not go to the ground and accurately locate those tracts. The contract therefore fails the test of specificity we have heretofore applied in specific performance cases involving land sales.[2]

The conduct of the parties after contract execution does not establish a meeting of minds on the boundaries of either critical tract. They met on several occasions and *disagreed* over boundaries. Each hired a surveyor to mark on the ground and to map his concept of the tract configurations. It is not even true that buyers occupied a specific ten acres about which estoppel could be asserted. By three years of fruitless negotiation, the parties merely demonstrated that their lack of familiarity with the property when they met in California in January of 1969 prevented their having that concurrence of understanding which is the essence of contract.

The suggestion in the majority opinion that the sellers refused to agree in bad faith and in hope of windfall profit is simply unjustified by the evidence. The buyers' own testimony is that Mr. Call, a seller, traveled from West Covina, California to St. George two or three times a year to negotiate and settle the tract delineation problem. The sellers surveyed and mapped proposals which were just as consistent with the contract language as buyers'. If any party to the contract imposed on the contract relationship, it would appear to have been the buyers. The buyers' initial occupation of the houses was, as I view the evidence, premature, presumptuous, and unexpected by sellers. By virtue of that occupation, however, they now seek to acquire a higher quality land than the sellers ever intended to release.

The buyers withdrew their claim for the value of improvements they made in the houses, and the District Court afforded to buyers the relief which is in accord with long equity precedent. This case serves uniquely as an instance of appellate insistence that a contract for the sale of real property be specifically performed by the Court's supplying the description where the contract does not identify and was not intended to identify the property to be sold. The majority decision departs from the doctrine of *Reed v. Lowe,* 8 Utah 39, 29 P. 740 (1892), *Davison v. Roberts,* 30 Utah 2d 338, 517 P.2d 1026 (1973), and *Pitcher v. Lauritzen,* 18 Utah 2d 368, 423 P.2d 491 (1967), which doctrine comports with the prevailing view throughout the country.

---

2.  *Jacobson v. Cox,* 115 Utah 102, 202 P.2d 714 (1949).