**COULTER & SMITH, LTD., a Nevada corporation, Plaintiff and Petitioner,**

v.

**Roger RUSSELL, Roger Richards, and Kristen Russell, Defendants and Respondents.**

No. 960462.

Supreme Court of Utah.

Sept. 25, 1998.

**854**

Richard A. Rappaport, Leslie Van Frank, Salt Lake City, for plaintiff.

Adam S. Affleck, John N. Brems, Michael N. Zundell, Salt Lake City, for defendants.

On Certiorari to the Utah Court of Appeals

DURHAM, Associate Chief Justice:

We granted Coulter & Smith, Ltd.'s (Coulter) petition for a writ of certiorari to review the Utah Court of Appeals' invalidation, under the rule against perpetuities, of Coulter's option to purchase land from respondent Roger Russell. We also granted Russell's cross petition for certiorari to determine whether the court of appeals correctly held that Coulter's option was supported by consideration. We affirm in part, reverse in part, and remand this case to the court of appeals for proceedings consistent with this opinion.

In the spring of 1991, Coulter and Russell entered into a letter agreement whereby Coulter was to develop Russell's property in conjunction with adjacent property it owned. Pursuant to their agreement, Coulter had the option to purchase the lots located on Russell's property after Coulter had completed the initial stages of development and subdivision. The letter agreement read, in its entirety, as follows:

Dear Dr. Russell:

In response to your request for a written proposal to purchase your lots west of 1700 East at 10800 South, I submit the following offer which you may accept by signing below:

Price: $26,000 per lot during the 1st month following completion of the lots; price of each lot to increase $100 per lot each month thereafter until each lot is closed.

Upon completion of the subdivision development we offer to pay you $1,500 per lot; the balance of the purchase price ($25,000 at the outset) to be paid upon closing of each lot. We understand that the cost of the land and lot improvements will be paid upon closing of each lot.

The enclosed Work Exchange Agreement will initiate our cooperative efforts. We will proceed posthaste to annex and develop our tracts jointly. I believe that working in concert will greatly facilitate zoning and all other development concerns.

Respectfully,

/s/ Nathan Coulter

Nathan Coulter

Coulter & Smith Ltd. is hereby granted an option to purchase lots as per terms detailed above: *This option terminates 2 years from the date of completion of the subdivision.*

/s/ Roger Russell 4/27/91

Dr. Roger Russell Date

In order to jointly develop the Coulter and Russell parcels, Coulter had to negotiate the purchase of several parcels located between them. Coulter also needed to get zoning and annexation approval from Sandy City. He

agreed to "proceed posthaste" to develop the property, and both parties anticipated that the development would be completed by spring of 1992.

The development did not proceed as expeditiously as planned. There is a dispute regarding the cause of the development's delay. Russell asserts that Coulter failed to diligently pursue development; according to Russell, Coulter did not submit an annexation application to Sandy City, did not perform the necessary physical work on the properties, and did not purchase the required nearby properties. Coulter counters that it did in fact proceed with the development. Coulter claims that it redesigned the subdivision drain system to accommodate Russell's property at an expense of approximately $35,000, signed contracts with two of the four neighboring property owners, and negotiated agreements with the other two. Coulter further claims that beginning in November 1992, Russell thwarted its efforts to develop the property by refusing to cooperate because Russell wanted instead to sell his property to the Church of Jesus Christ of Latter Day Saints (LDS Church).

The LDS Church did not buy Russell's property, but did purchase a portion of the Coulter property and a portion of one of the neighboring properties. In May 1994, another developer became interested in the Russell property. That developer immediately submitted an annexation application to Sandy City. On September 13, 1994, Sandy City approved the annexation and zoned the property for 20,000 square foot residential lots. As a result of the low-density zoning, Russell could divide his property into only six lots.

One day after the Russell property was annexed and zoned by Sandy City, Coulter filed a complaint in the district court alleging a breach of the option contract contained in the letter agreement. Russell moved for summary judgment, which the district court granted. The court issued findings of fact and conclusions of law holding that the option in the letter agreement was unenforceable for the following reasons: (1) The letter agreement violated the statute of frauds because it did not contain an adequate description of the subdivision lots; (2) the option

itself violated the rule against perpetuities; (3) Coulter had not exercised his option within a reasonable time; (4) the option was not supported by consideration; and (5) Russell rescinded any offer or option to purchase the property created by the letter agreement.

Coulter appealed the trial court's grant of summary judgment. A majority of the court of appeals' panel reversed on the issue of the adequacy of consideration, finding that the option was supported by consideration. *Coulter & Smith, Ltd. v. Russell,* 925 P.2d 1258, 1262 (Utah Ct.App.1996), *cert. granted,* 936 P.2d 407 (Utah 1997). However, the court upheld the trial court's finding that the option violated the rule against perpetuities because the letter agreement did not expressly require the transfer of the property to be completed within the perpetuities period. *Id.* at 1263. Because the court of appeals upheld the district court's invalidation of the option, it did not address the other issues raised on appeal. *Id.*

We granted Coulter's petition for certiorari to address the applicability of the rule against perpetuities to its option agreement, and granted Russell's cross petition to determine whether the court of appeals correctly found adequate consideration to support the option. *Coulter & Smith, Ltd. v. Russell,* 936 P.2d 407 (Utah 1997). In his brief, Russell includes arguments on the following points which were not included in his cross petition for certiorari: (1) The option is void under the statute of frauds; (2) Coulter did not exercise the option within a reasonable time and; (3) the letter agreement was merely a continuing offer to sell. Coulter moved to strike the arguments raised in Russell's brief which were not included in his cross petition for certiorari. We deferred ruling on the motion to strike.

 On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same standard of review used by the court of appeals. Utah Code Ann. § 78–2–2(3)(a) (1996); *Hebertson v. Willowcreek Plaza,* 923 P.2d 1389, 1392 (Utah 1996); *Butterfield v. Okubo,* 831 P.2d 97, 101 n. 2 (Utah 1992). This case involves summary judgment and therefore we consider the evidence in the

light most favorable to Coulter; we will affirm only if there is no dispute of material fact and Russell is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Butterfield*, 831 P.2d at 99. Because summary judgment involves only legal issues, we accord no deference to the lower court's factual conclusions. *A.C. Fin., Inc. v. Salt Lake County*, 948 P.2d 771, 773 (Utah 1997).

■ Before addressing the merits of the matters raised in the petition and cross petition, we wish to clarify the scope of our review on certiorari. Review on certiorari is limited to examining the court of appeals' decision and is further circumscribed by the issues raised in the petitions. Utah Code Ann. § 78-2-2(3)(a); Utah R.App. P. 49(a)(4); *DeBry v. Noble*, 889 P.2d 428, 443 (Utah 1995) (stating issues not raised in the petitions for certiorari not properly before the court); *Butterfield*, 831 P.2d at 101 n. 2 (declaring certiorari review is limited to examining the court of appeals' decision); *see also Sevy v. Security Title Co.*, 902 P.2d 629, 637 (Utah 1995); *Willardson v. Industrial Comm'n*, 904 P.2d 671, 673 (Utah 1995). On certiorari "[o]nly the questions set forth in the petition or fairly included therein will be considered by the Supreme Court."[1] Utah R.App. P. 49(a)(4).

Therefore, we will consider only the issues raised in Coulter's petition and in Russell's cross petition, namely: (1) whether the court of appeals properly voided Coulter's option under the rule against perpetuities, and (2) whether the court correctly concluded that the option was supported by consideration.

## I. RULE AGAINST PERPETUITIES

■ The rule against perpetuities states that a future interest "must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Clark v. Shelton*, 584 P.2d 875, 876 (Utah 1978) (citing John C. Gray *The Rule Against Perpetuities* § 201 (4th ed.1942)). Coulter's option to purchase the Russell property is an interest in real estate, which falls within the

ambit of the rule. *See Clark*, 584 P.2d at 876; *Coombs v. Ouzounian*, 24 Utah 2d 39, 41, 465 P.2d 356, 358 (1970).

The letter agreement between Coulter and Russell did not specifically state a time within which Coulter had to complete the development of the property and exercise its option to purchase Russell's land. Because the option does not require the transfer of the property to occur within the perpetuities period, a majority of the court of appeals panel declared it void. *Coulter*, 925 P.2d at 1263. Judge Jackson dissented, explaining that for public policy reasons, the ordinary rules of contract construction should be applied prior to employing the rule against perpetuities. *Id.* at 1263–70.

In addition to urging the analysis contained in Judge Jackson's dissent, Coulter argues that the rule against perpetuities should not apply to an option created in a commercial setting. We agree that the court of appeals erred in applying the rule against perpetuities prior to applying ordinary rules of contract construction. However, we are unwilling to adopt Coulter's position that the rule should never apply to a commercial transaction.

■ The rule against perpetuities had its origins in the *Duke of Norfolk's Case*, 3 Ch. Cas. 1, decided in 1682. *See Wildenstein & Co., Inc. v. Wallis*, 79 N.Y.2d 641, 584 N.Y.S.2d 753, 595 N.E.2d 828, 831 (1992). It is a judicially created rule adopted at one time by every jurisdiction in the United States. Restatement (Second) of Property (Donative Transfers) Pt. I, Introduction at 11 (1983). The fundamental purpose of the rule was to prohibit restraints on alienation of property which were unreasonably long or unlimited in duration. *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 326 N.E.2d 676, 680, *cert. denied*, 423 U.S. 866, 96 S.Ct. 128, 46 L.Ed.2d 96 (1975). At its inception the rule was designed to prevent a family from tying up property indefinitely by making future interests dependent on remote contin-

---

**1.** In *West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994), footnote 22 of the opinion suggested that affirmation on alternative grounds is available on certiorari to the same extent as on direct appeal. This issue was not raised by the parties in *West*, and the implication in footnote 22 is incorrect.

gencies. *Hartnett v. Jones,* 629 P.2d 1357, 1361 (Wyo.1981). Courts and commentators alike note that applying the rule to modern commercial transactions has capricious consequences and they sharply criticize the rule's application in the commercial setting. *See, e.g., Hartnett,* 629 P.2d at 1362 (stating "no worthwhile social or economic purpose is served by applying [the rule] to a common provision in commercial ventures"); *Wong v. DiGrazia,* 60 Cal.2d 525, 35 Cal.Rptr. 241, 386 P.2d 817, 823 (1963) (stating that the rule against perpetuities "has no significance in the world of commercial affairs") (citing W. Barton Leach, *Perpetuities in a Nutshell,* 51 Harv. L.Rev. 638 (1938)); *see also* W. Barton Leach, *Perpetuities: New Absurdity, Judicial and Statutory Correctives,* 73 Harv. L.Rev. 1318 (1960). Although the criticism of the rule's application in the commercial context appears to be well taken, under the facts of this case, we will not make such a sweeping change to the rule's application to a whole class of future interests.

■ That conclusion, however, does not require us to apply the rule rigidly and without considering its origin and purpose. *Continental Cablevision v. United Broadcasting Co.,* 873 F.2d 717, 723 (4th Cir.1989); *Cambridge Co. v. East Slope Inv. Corp.,* 700 P.2d 537, 540 (Colo.1985). The goals of commercial ventures are not usually focused on restricting alienation of property into the distant future. It is unlikely that parties to a commercial transaction will ever intend the remote vesting prohibited by the rule. Furthermore, those engaged in commercial transactions expect that the rules of contract construction will apply to their agreements to promote their intent. Thus, we should apply the ordinary rules of contract construction to determine the nature and extent of an interest and then apply the rule against perpetuities to determine the interest's validity. *See Read v. GHDC, Inc.,* 254 Ga. 706, 334 S.E.2d 165, 166 (1985) (it is "necessary to construe the contract before considering the effect of the rule"); *Greco v. Meadow River Coal & Land Co.,* 145 W.Va. 153, 113 S.E.2d 79, 83 (1960) (applying rules of contract construction to an instrument prior to applying the rule).

We have already implicitly adopted the position that a contract should first be interpreted by utilizing the ordinary rules of contract construction before applying the rule against perpetuities. We have done this in cases in which we consistently validated interests challenged under the rule by embracing interpretations of the challenged interests which avoid its application. *See, e.g., Clark,* 584 P.2d at 877 (focusing on the intent of parties in construing an ambiguous contract and finding that the rule was not violated because option must be exercised within a life in being); *Hidden Meadows Dev. Co. v. Mills,* 29 Utah 2d 469, 511 P.2d 737 (1973) (construing a perpetually renewable option as valid under the rule); *Kamas State Bank v. Bourgeois,* 14 Utah 2d 188, 192, 380 P.2d 931, 933 (1963) (holding a buy back option expires at the death of the holder and is valid under the rule); *Anderson v. Anderson,* 15 Utah 2d 7, 10, 386 P.2d 406, 408 (1963) (finding that the rule against perpetuities did not apply to a conditional deed/sales contract because no present interest in land was involved); *Fisher v. Bailey,* 14 Utah 2d 424, 427, 385 P.2d 985, 988 (1963) (implying a reasonable time within which to exercise option); *Cummings v. Nielson,* 42 Utah 157, 168, 129 P. 619, 622 (1912) (supplying a reasonable time restriction to an option). Thus, our prior case law supports applying ordinary rules of contract construction before applying the rule against perpetuities to a commercial option.

■ We turn next to the rules of contract construction. "[A] cardinal rule in construing ... a contract is to give effect to the intentions of the parties." *DeBry v. Occidental/Nebraska Fed. Sav. Bank,* 754 P.2d 60, 62 (Utah 1988) (citing *Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988)); *see also Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1044 (Utah 1989) (stating contracts should be construed to give effect to the intent of the parties); *DuBois v. Nye,* 584 P.2d 823, 824–25 (Utah 1978) (same); *Maw v. Noble,* 10 Utah 2d 440, 443, 354 P.2d 121, 123 (1960) ("if the intent of the parties can be ascertained with reasonable certainty it must be given effect"); *Cummings,* 129 P. at 622 (stating that it is the duty of every

court to ascertain and give effect to the intention of the parties). Such intent is gleaned from the totality of the circumstances. *Allen v. Prudential Prop. & Cas. Ins.*, 839 P.2d 798, 810 (Utah 1992).

■ In an attempt to give effect to the intent of the parties, the settled rule is that if a contract fails to specify a time of performance the law implies that it shall be done within a reasonable time under the circumstances. *Watson v. Hatch*, 728 P.2d 989, 990 (Utah 1986) (citing *Bradford v. Alvey & Sons*, 621 P.2d 1240, 1242 (Utah 1980)); *Forsgren v. Sollie*, 659 P.2d 1068, 1071 (Utah 1983) (implying a reasonable time constraint on the performance of a condition subsequent in a real estate transfer). That rule of construction applies equally to options. *Catmull v. Johnson*, 541 P.2d 793, 795–96 (Utah 1975); *Cummings*, 129 P. at 622. An implied reasonable time limit is as much a part of the agreement as those terms that are expressed. *Cummings*, 129 P. at 622.

■ Furthermore, where two different constructions of an instrument are possible, and only one of them results in an interest violative of the rule, the interpretation favoring validity should be adopted. *Drach v. Ely*, 237 Kan. 654, 703 P.2d 746, 749 (1985); *Singer Co. v. Makad, Inc.*, 213 Kan. 725, 518 P.2d 493, 499 (1974); *Wong*, 35 Cal.Rptr. 241, 386 P.2d at 827. The choice of contract interpretations which avoid invalidating an agreement is favored under Utah law. *See, e.g., Stangl v. Todd*, 554 P.2d 1316, 1319–20 (Utah 1976); *Driggs v. Utah Teachers Retirement Bd.*, 105 Utah 417, 431–32, 142 P.2d 657, 663 (1943).

■ Applying the aforementioned rules of contract construction to the agreement in this case, we conclude that it was implied in the contract that Coulter would complete the initial stages of development and exercise its option to purchase Russell's property within a reasonable time. We can glean Coulter and Russell's intent from the letter agreement itself. In the agreement Coulter agreed to "proceed posthaste to annex and develop [their] tracts jointly." That statement indicates an intent to complete the development and exercise the option within a

reasonable time. *Isen v. Giant Food, Inc.*, 295 F.2d 136, 138 (D.C.Cir.1961) (indicating that statement requiring lessor to "diligently pursue" a zoning variance implied a reasonable time requirement); *Myers v. Hardin*, 208 Ark. 505, 186 S.W.2d 925, 928 (1945) (implying a reasonable time requirement for a trustee who must distribute res "as soon as possible"); *Wong*, 35 Cal.Rptr. 241, 386 P.2d at 824–25 ("The use of terms 'forthwith' and 'continue expeditiously,' and additional clauses, contained in a contract which sets no specific date for completion of construction imposes upon defendants an obligation to complete construction within a reasonable time." (citations omitted)).

■ Once we have determined the scope of the option agreement by applying the ordinary rules of contract construction, we proceed to the application of the rule against perpetuities. "Courts and scholars almost unanimously agree that provisions which make vesting contingent upon performance within a reasonable time ... do not violate the rule 'if, in the light of the surrounding circumstances, as a matter of construction 'a reasonable time' is necessarily less than twenty-one years.' " *Wong*, 35 Cal.Rptr. 241, 386 P.2d at 825 (citations omitted). Thus, absent any indication that Coulter and Russell intended to hold the option open indefinitely, we hold that the contract contemplates that Coulter was to exercise the option to purchase Russell's property within a reasonable time. *Hidden Meadows Dev. Co.*, 29 Utah 2d at 471–72, 511 P.2d at 739 (upholding an interest under a rule against perpetuities challenge and noting that "nothing in the contract ... [indicated] that the parties intended the option to continue for an unlimited duration"). What is a reasonable time under the circumstances and whether that period is less than twenty-one years is a factual determination beyond the scope of our review. *Wingets, Inc. v. Bitters*, 28 Utah 2d 231, 500 P.2d 1007, 1009–10 (1972); *Fisher*, 385 P.2d at 988–89.

Based on the foregoing, we conclude that the court of appeals erred in applying the rule against perpetuities to the option without first employing the ordinary rules of contract construction to determine the scope

of the interest created by the option. Applying those rules, we find that the parties expressly agreed to proceed expeditiously in developing and subdividing their properties and we will, therefore, infer from their agreement a reasonable time constraint within which Coulter must exercise the option. Thus, the option will be valid under the rule against perpetuities so long as a trier of fact determines that a reasonable time in this case is less than twenty-one years.

## II. CONSIDERATION

■ An option contract is a continuing offer, supported by consideration, which the promisor is bound to keep open. *Jensen v. Anderson,* 24 Utah 2d 191, 192, 468 P.2d 366, 367 (1970) (citing *Walker v. Bamberger,* 17 Utah 239, 246, 54 P. 108, 109 (1898)). It is a unilateral obligation binding only on the optionor. *Cahoon v. Cahoon,* 641 P.2d 140, 143 (Utah 1982). It is unique; the holder has "the legal power to consummate a second contract ... and at the same time the legal privilege of not exercising it." *Property Assistance Corp. v. Roberts,* 768 P.2d 976, 978 (Utah Ct.App.1989) (citing 1A *Corbin on Contracts* § 259, at 464 (1963)). An option consists of the following two elements: "(1) an offer to sell, which does not become a contract until accepted; and (2) a contract to leave the offer open for a specified time." *Id.* (citations omitted). The contract to leave the option open for a specified time must be supported by consideration; without it the promisor is not bound. *Jensen,* 468 P.2d at 367.

■ Russell argues that the court of appeals erred in concluding that his offer to sell his property was supported by consideration because Coulter was not bound to proceed with the development of the property. "Consideration is 'an act or promise, bargained for and given in exchange for a promise.' " *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.,* 770 P.2d 88, 91 (Utah 1988) (quoting *Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1036 (Utah 1985)); *see also DeMentas v. Estate of Tallas,* 764 P.2d 628, 632 (Utah Ct.App.1988) ("A generally accepted definition of consideration is that a legal detriment has been bargained for

and exchanged for a promise." (citing *Miller v. Miller,* 664 P.2d 39, 40–41 (Wyo.1983))). "Consideration sufficient to support the garden variety contract will likewise support an option." 3 Eric M. Holmes, *Corbin on Contracts* § 11.7, at 508 (Joseph M. Perillo ed., 1996). It is not necessary for the promisor to render performance in order for us to find consideration; the reciprocal promise is sufficient consideration to form a contract. *Copper State Leasing,* 770 P.2d at 91.

■ In this case the court of appeals correctly found adequate consideration to support an option contract. *Coulter,* 925 P.2d at 1261. Coulter promised to "proceed posthaste to annex and develop our tracts jointly." That promise was bargained for and given in exchange for Russell's promise to hold open the offer to sell his property to Coulter. Furthermore, a court can examine the "entire dealings" and "total commitments" of the parties to divine the true consideration for an option. *Miller v. Archer,* 749 P.2d 1274, 1278 (Utah Ct.App.), *cert. denied,* 765 P.2d 1278 (Utah 1988). For example, in *Miller,* the court of appeals upheld a trial court's conclusion that it could find the consideration necessary to validate an option to purchase a ranch by examining the other documents executed at the same time as the option and the tax structure of the entire agreement. *Id.* In this case, Coulter and Russell entered into the Three–Way Work Exchange Agreement in which Coulter promised to make improvements in the master drain system for the benefit of Russell's property. This agreement was executed along with the letter agreement. Coulter would have no reason to enter into the three-way agreement absent the option to purchase the Russell property. Thus, the district court could properly find consideration for the option in the Three–Way Work Exchange Agreement executed in conjunction with the letter agreement.

■ The essence of Russell's argument is that Coulter failed to perform the promise it gave in consideration for Russell leaving open the offer to sell Coulter his property. Russell confuses the consideration necessary for contract formation with the

consideration necessary to compel his performance. Coulter's allegedly insufficient efforts to expeditiously proceed with the development of Russell's property may constitute a failure of consideration that would relieve Russell from his obligation to perform, but it was not a lack of consideration sufficient to void the option entirely. If there is no consideration, there is no contract. If, on the other hand, consideration fails because one party fails to perform, the other party's performance cannot be compelled. *Copper State Leasing,* 770 P.2d at 91 (citing *General Ins. Co. of Am. v. Carnicero Dynasty Corp.,* 545 P.2d 502, 504 (Utah 1976)). If in fact Coulter did fail to perform, Russell's performance—holding open the offer to sell—cannot be compelled.

We affirm the court of appeals' holding that adequate consideration existed to support the option. However, we hold that the rule against perpetuities does not void the option, and therefore reverse on that issue. Finally, we remand this case to the court of appeals to address the remaining issues raised in the briefs filed with that court.

HOWE, C.J., and STEWART, ZIMMERMAN and RUSSON, JJ., concur in Associate Chief Justice DURHAM's opinion.