1999 UT App 055

**COULTER & SMITH, LTD., a Nevada corporation, Plaintiff and Appellant,**

v.

**Roger RUSSELL, Roger Richards, and Kristen Russell, Defendants and Appellees.**

**No. 951726–CA.**

Court of Appeals of Utah.

Feb. 25, 1999.

---

Richard A. Rappaport and Leslie Van Frank, Cohne Rappaport & Segal, Salt Lake City, for Appellant.

Michael N. Zundel, John N. Brems, and Adam S. Affleck, Jardine Linebaugh & Dunn, Salt Lake City, for Appellees.

Before Judges WILKINS, P.J., and DAVIS and JACKSON, JJ.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Coulter & Smith, Ltd. (Coulter) appeals the trial court's summary judgment in favor of Roger Russell, Roger Richards and Kristen Russell Russell. We reverse in part and remand for further proceedings.

## BACKGROUND

¶ 2 This matter comes before us pursuant to a remand from the Utah Supreme Court. A more complete statement of the facts giving rise to this dispute is contained in *Coulter & Smith, Ltd. v. Russell,* 966 P.2d 852 (Utah 1998) (*Coulter II*).

¶ 3 The relevant facts are as follows: Coulter and Russell owned adjacent parcels of property in Salt Lake County. Discovering their similar development plans, Coulter and Russell discussed the possibility of Coulter buying the Russell property, a 3.67 acre parcel. In 1991, Coulter and Russell entered into a written agreement which provided that Coulter was to develop Russell's property. In addition, the agreement gave Coulter the option to purchase the lots located on Russell's property after Coulter completed the initial stages of development and subdivision. On April 27, 1991, the agreement was memorialized in the following letter signed by both parties:

Dear Dr. Russell:

In response to your request for a written proposal to purchase your lots west of 1700 East at 10800 South, I submit the following offer which you may accept by signing below:

Price: $26,500 per lot during the 1st month following completion of the lots; price of each lot to increase $100 per lot each month thereafter until each lot is closed. Upon completion of the subdivision development we offer to pay you $1,500 per lot; the balance of the purchase price ($25,000 at the outset) to be paid upon closing of each lot. We understand that the cost of the land and lot improvements will be paid upon closing of each lot.

The enclosed Work Exchange Agreement will initiate our cooperative efforts. We will proceed posthaste to annex and develop our tracts jointly. I believe that working in concert will greatly facilitate zoning and all other development concerns.

Respectfully,

/s/Nathan Coulter

Nathan Coulter

pmp

Coulter & Smith Ltd. is hereby granted an option to purchase lots as per terms detailed above: This option terminates 2 years from the date of completion of the subdivision.

/s/Roger Russell 4–27–91 1991

Dr. Roger Russell Date

¶ 4 When Russell signed the agreement, no lots existed on the Russell property. Also, the parties were unaware of the exact number of lots that could eventually be developed because they had not yet attempted to annex the property to Sandy City and obtain appropriate zoning.

¶ 5 In November 1992, Russell informed Coulter he intended to sell the property to a third party. In late 1994, Sandy City approved the annexation of the property and zoned it for 20,000 square foot residential lots. As a result of the zoning, Russell could divide his property into six lots.

¶ 6 Thereafter, Russell refused to honor the agreement and Coulter brought suit for specific performance. Russell moved for summary judgment which the district court granted. The district court held that the agreement was unenforceable because (1) the agreement violated the statute of frauds because it did not contain an adequate description of the subdivision lots; (2) the agreement violated the rule against perpetuities; (3) Coulter did not exercise the option within a reasonable time; (4) the option was not supported by consideration; and (5) Russell rescinded any offer or option to purchase the property created by the agreement. Coulter appealed the trial court's grant of summary judgment.

¶ 7 On appeal to this court the first time, Coulter asserted that the trial court erred as a matter of law in ruling: (1) the agreement was unenforceable under the statute of frauds; (2) the agreement violated the rule against perpetuities; (3) a reasonable time for the exercise of the option had passed; and (4) Coulter furnished no consideration for the agreement. We reversed the trial court's ruling that no consideration existed. *See Coulter & Smith, Ltd. v. Russell,* 925 P.2d 1258, 1262 (Utah Ct.App.1996) (*Coulter I*). We also ruled that the option was invalid

as it violated the rule against perpetuities. *See id.* at 1263.

¶ 8 The supreme court granted Coulter's petition for a writ of certiorari to determine whether the option was supported by consideration and whether the option violated the rule against perpetuities. The supreme court also concluded that adequate consideration existed, *see Coulter II,* 966 P.2d at 859–60, and further held that the rule against perpetuities did not invalidate the option. *See id.* at 858–60. The supreme court remanded the case to this court to address whether the trial court correctly ruled on the remaining issues: First, whether Coulter failed to exercise the option within a reasonable time; second, whether the agreement violated the statute of frauds; and third, whether Russell rescinded any offer or option to purchase the property created by the agreement. We address these issues in turn.

## STANDARD OF REVIEW

¶ 9 "In reviewing a case disposed of in the district court by summary judgment, we consider the evidence in the light most favorable to the losing party, and affirm only where it appears that there is no genuine dispute as to any material issues of fact" and where the moving party is entitled to judgment as a matter of law. *Themy v. Seagull Enter., Inc.,* 595 P.2d 526, 528–29 (Utah 1979). We examine a trial court's award of summary judgment for correctness, according no deference to the trial court's legal conclusions. *See A.C. Fin., Inc. v. Salt Lake County,* 948 P.2d 771, 773 (Utah 1997).

## ANALYSIS

### I. *Reasonable Passage of Time*

■ ¶ 10 Coulter argues that the trial court improperly ruled that a reasonable time period had passed for the exercise of the option. Coulter and Russell have presented conflicting evidence as to when they contemplated the transfer of the property. Russell submitted an affidavit indicating that the option was exercisable until spring of 1992. By contrast, Coulter's affidavit stated that the parties intended the subdivision development to be accomplished with due diligence, and while Coulter hoped the option could be exercised by the spring of 1992, he never committed to that date. Inasmuch as Coulter and Russell have presented conflicting evidence as to when the parties contemplated the transfer of the property, a genuine issue of material fact exists. As such, summary judgment on this point is improper, and we therefore reverse and remand this issue to the district court for trial to determine, if possible, when the parties contemplated the conveyance would occur. *See Kunz & Co. v. State,* 913 P.2d 765, 769 (Utah Ct.App.1996) (subsequent history omitted) (when conflicting evidence on material issue of fact exists, remand for trial is proper). In so doing, the trial court may also consider, among other issues, what constitutes a "reasonable time" under the circumstances of this case, in light of the supreme court's ruling that the option will be valid under the rule against perpetuities so long as the fact-finder determines that a "reasonable time" for the exercise of the option is less than twenty-one years. *See Coulter II,* 966 P.2d at 858–59 (holding reasonable time under the circumstances and whether that period is less than twenty-one years must be determined by fact-finder).

### II. *Statute of Frauds*

¶ 11 Next, we discuss Coulter's assertion that the option agreement meets the requirements of the statute of frauds. The trial court concluded that "[a]lthough the legal description of the overall parcel owned by Russell is sufficient, the purported option is deficient as to the number of lots and as to the price to be paid, and therefore, the purported option is unenforceable."[1] We disagree that the option is voided by the statute of frauds.

■ ¶ 12 The statute of frauds states: "Every contract … for the sale, of … any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party

---

1. Although the trial court does not specify in its findings of fact and conclusions of law that the statute of frauds is what rendered the option agreement unenforceable, it did refer to the statute of frauds in its oral ruling and the parties argue the appeal on that basis.

by whom the ... sale is to be made...." Utah Code Ann. § 25-5-3 (1995). An option to purchase is an interest in land within the statute of frauds. *See Coombs v. Ouzounian*, 24 Utah 2d 39, 465 P.2d 356, 358 (1970); 2 Arthur L. Corbin, *Corbin on Contracts* § 418 (1950). Thus, an option agreement must satisfy the statute of frauds by including "all the essential terms and provisions of the contract." *Birdzell v. Utah Oil Refining Co.*, 121 Utah 412, 242 P.2d 578, 580 (1952). The two essential terms at issue here are property description and·price. *See* 2 Corbin, *supra*, § 499 (stating description and price terms are essential).

## A. Land Description

■ ¶ 13 Regarding the land description, the parties do not dispute that the land in question is the Russell property. However, Russell argues that because the land is described in the option agreement as *"your lots west of 1700 East at 10800 South"* (emphasis added), when the land had not actually been divided into lots at that point, the agreement "describes nothing" and is fatally flawed. We are unpersuaded both by Russell's logic and his attempt to distinguish *Calder v. Third Judicial Dist. Court*, 2 Utah 2d 309, 273 P.2d 168 (1954), from the case at bar.

¶ 14 *Calder* involved a contract to sell an unspecified two hundred acre parcel to be selected by the buyer from a specified larger tract of land. *See id.* at 169. The buyer sought to evade the contract, arguing it was voided by the statute of frauds because the description "was so vague and uncertain." *Id.* However, because the contract supplied a definite way to determine the land description—by buyer selection—with no further agreement between the parties needed, the court held it to be a valid enforceable contract. *See id.* at 170–71.

■ ¶ 15 Likewise, the option agreement here supplies a definite method to determine the land description without further agreement by the parties: Coulter was to develop the lots according to Sandy City's annexation and zoning requirements,[2] then Coulter was to have the exclusive right to choose to buy or not to buy whatever lots it wanted of whatever description that arose out of the annexation and zoning process. Concerning the land description, Coulter and Russell had no haggling left to do after signing the option agreement. Thus, we conclude the land description does not violate the statute of frauds.

## B. Price Term

■ ¶ 16 Russell further argues that, although the option agreement shows a firm price per lot, the agreement violates the stat-

---

**2.** In his brief, Russell concedes the involvement of Sandy City and the dependency on "administrative contingencies" to determine "the total number and size of the lots." He does not claim the right to further negotiate anything regarding the land description. "[T]here is no need for evidence on points not in dispute." Restatement (Second) Contracts § 131 cmt. c (1979).

Nevertheless, Russell argues time and again that we should ignore anything outside the option agreement—even facts he acknowledges—to aid us in understanding the full meaning of the description and price terms. However, the policy underlying the statute of frauds is

the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made.... [I]t is not to create a loophole of escape for dishonest repudiators. Therefore, we should always be satisfied with 'some note or memorandum' that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by en-

forcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail.

With ample explanation and corroboration to be found in undoubted surrounding circumstances or even in accompanying oral testimony, a writing may be sufficient even though it is cryptic, abbreviated, and incomplete.

2 Arthur L. Corbin, *Corbin on Contracts* § 498 (1950); *see Jacobson v. Cox*, 115 Utah 102, 116, 202 P.2d 714, 722 (1949); Restatement (Second) Contracts § 131 cmt. c (1979).

Because we see no danger of fraud in enforcing this contract, we reject Russell's attempt to avoid on a technicality the bargain he made, regardless of how unwise or risky it may be. He seems concerned that he bore the risk that Sandy City would zone the property for fewer rather than more lots, leaving him entitled to less money. However, the statute of frauds is not designed to rescue a party from a voluntary risky deal; it is to prevent fraud.

ute of frauds because it is impossible to determine the total price for the Russell property in that the parties did not yet know how many lots would be approved for the property. This argument fails for the same reason the above argument failed: The option agreement leaves no room for further negotiations. *See Birdzell*, 242 P.2d at 580 (implying agreement valid as to price term if no further negotiations needed); 71 Am. Jur.2d *Specific Performance* § 32 (1973) (stating fact that some terms are left to future determination does not preclude specific performance when contract provides means by which uncertain terms are to be made certain, e.g., "where price is to be fixed or determined by third parties").

¶ 17 Russell has already admitted that the number of lots to be developed on the Russell property was to be determined by the Sandy City annexation and zoning process—a third party. Thus, the price term may be made certain upon completion of that process, when the total number of lots should be multiplied by $26,500. Again, the option agreement leaves no room for further bargaining by the parties. Accordingly, the agreement is not voided by the statute of frauds for lack of a price term.

### III. *Rescission of Offer*

¶ 18 Finally, we review whether the trial court correctly ruled that Russell rescinded the offer to sell the lots to Coulter when Russell informed Coulter of his intent to sell the property to the LDS Church in November 1992.

¶ 19 An option contract is a continuing offer, supported by sufficient consideration, "which, for the time agreed upon cannot be unilaterally withdrawn, revoked, or rescinded by the offeror and may only be modified, released, or rescinded by agreement of the parties." 17A Am.Jur.2d *Contracts* § 49 (1991); *see Coulter II*, 966 P.2d at 859; *Jensen v. Anderson*, 24 Utah 2d 191, 468 P.2d 366, 367 (1970).

¶ 20 In this case, the supreme court ruled that adequate consideration supported the option contract. *See Coulter II*, 966 P.2d at 859–60. As such, Russell's offer constituted a binding option which Russell could not rescind prior to the option's agreed upon termination—two years from the date of completion of the subdivision. Because the option had not expired in 1992, when Russell informed Coulter of his intent to sell the property to the LDS church, Russell's attempted withdrawal of the offer had no legal effect. Alternatively, if the trial court determines that a "reasonable time" had passed as of November 1992, then the option had already expired and no offer then existed for Russell to withdraw, revoke, or rescind. Therefore, we hold that Russell did not rescind his offer to sell to Coulter and reverse the trial court's ruling on this issue.

### CONCLUSION

¶ 21 We conclude that a genuine issue of material fact exists with regard to when Coulter and Russell contemplated the transfer of the Russell property. As such, we reverse and remand this issue to the district court to determine when the parties contemplated the conveyance would occur and, if necessary, to determine what constitutes a reasonable passage of time under the circumstances of this case. In addition, we reverse the trial court's rulings that the agreement violated the statute of frauds and that Russell rescinded the offer to sell the lots to Coulter.

¶ 22 Reversed in part and remanded for further proceedings consistent with this opinion.

¶ 23 DAVIS and JACKSON, JJ., concur.