2014 UT App 70

**JDW–CM, LLC, Plaintiff and Appellant,**

v.

**Clark LHS, LLC, Defendant and Appellee.**

No. 20110708–CA.

Court of Appeals of Utah.

March 27, 2014.

Brian W. Steffensen, for Appellant.

George A. Hunt and Mark R. Anderson, for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judges JAMES Z. DAVIS and WILLIAM A. THORNE JR. concurred.[1]

1. Judge William A. Thorne Jr. participated in and voted on this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

OPINION

CHRISTIANSEN, Judge:

¶ 1 JDW–CM, LLC (Plaintiff) appeals from an order granting summary judgment in favor of Clark LHS, LLC. We affirm.

BACKGROUND

¶ 2 This appeal arises from Plaintiff's attempts to quiet title to certain real property in a series of lawsuits.[2] On January 7, 1997, John Clark, acting on behalf of Clark Properties, Inc., borrowed approximately $200,000 from Vance Cook and Mark Merrill (collectively, Lenders). This loan was evidenced by a promissory note and secured by Lenders' trust deed recorded against two parcels of property. The first of these parcels consisted of lots in the Deer Run at Maple Hills subdivision (Deer Run) in Bountiful, Utah. The second parcel was a fourteen-acre piece of property located in Kaysville, Utah (the Kaysville Parcel). In terms of foreclosure priority, Lenders' trust deed was in second position on the Kaysville Parcel behind a trust deed held by Barnes Bank. Clark later sold the Kaysville Parcel to Scott Turville.

¶ 3 Barnes Bank subsequently initiated foreclosure proceedings against the Kaysville Parcel, and a foreclosure sale was scheduled. On the morning of the sale, Lenders entered into a handwritten foreclosure and redemption agreement (the FRA) with Clark. Under the FRA, Clark was to pay off the Barnes Bank loan to protect the Kaysville Parcel from foreclosure. As a guarantee of his performance, Clark agreed to quitclaim another piece of property (Lot 307) to Lenders, which property Lenders would take title to if Clark failed to satisfy the Barnes Bank loan and halt the foreclosure of the Kaysville Parcel. The FRA also entitled Lenders to record a quitclaim deed to Lot 3 at Deer Run (Lot 3) if Lenders were forced to bid their trust deed on the Kaysville Parcel at the foreclosure sale:

> As an additional guarantee for the incentive to have [Lenders] bid their existing note or any part thereof for any amount at

the foreclosure sale, Clark will provide a quit claim deed to [Lot 3]. In the event [Lenders] need to bid their existing note or any part thereof to help protect the [Kaysville Parcel], then [Lenders] can record the quit claim deed on [Lot 3] to secure the existing note. [Lenders] will receive title to the [Kaysville Parcel] under foreclosure.

According to Plaintiff, Lenders' successor in interest, Clark also allegedly told Lenders that the lots that he agreed to quitclaim to them—Lot 3 and Lot 307—would act as additional payment or collateral for their loan (the Oral Agreement). Clark then signed and delivered to Lenders quitclaim deeds to Lot 3 and Lot 307.

¶ 4 Prior to the foreclosure sale, Turville paid off the Barnes Bank loan. Thus, the sale never took place, and Lenders' trust deed moved into first priority on the Kaysville Parcel. Clark made no further payments on Lenders' promissory note. In September 1999, Plaintiff entered into an agreement with Lenders to purchase the promissory note, the trust deed to the Kaysville Parcel, and any rights under the quitclaim deeds to Lot 3 and Lot 307. Lot 3 and Lot 307 were subsequently transferred to Clark LHS, LLC. Litigation regarding title to Lot 3 and Lot 307 commenced between Plaintiff and Clark LHS, LLC in November 2000. In that first case, Plaintiff sought to quiet title to Lot 3 and Lot 307, alleging fraud, breach of contract, and civil conspiracy.

¶ 5 After a bench trial in November 2009, the district court ruled that Plaintiff was entitled to Lot 307 because Clark did not himself pay off the Barnes Bank loan as he agreed to do under the FRA. The court also ruled that because Lenders were not forced to bid their trust deed or note on the Kaysville Parcel, the conditions necessary to record the quitclaim deed to Lot 3 were not satisfied. Accordingly, the court ruled that Plaintiff had no legal right to Lot 3.

*Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343.

2. "[W]hen reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party." *Begaye v.*

¶ 6 During the trial, Plaintiff attempted to raise a new estoppel claim through an oral motion to amend its complaint. Plaintiff asserted that because it had recorded the quitclaim deeds in 2008, and because Clark never demanded the return or cancellation of the deeds, Plaintiff was entitled to an order quieting title to Lot 3 in its favor (the Estoppel Claim). In its order denying the motion, the court determined that the facts of the Estoppel Claim had arisen after the claims in the first case were filed and were therefore not part of the first case and would not be tried therein.

¶ 7 Plaintiff also argued for the first time at trial that pursuant to the Oral Agreement between Cook and Clark, the quitclaim deed to Lot 3 acted as substitute collateral or payment for Lenders' loan (the Oral Agreement Claim). Though briefly touching on the merits of this issue, the court ultimately declined to determine whether there was an oral agreement, stating that the facts surrounding the Oral Agreement Claim had not been properly presented to the court.

¶ 8 Having lost its claim to Lot 3, Plaintiff filed a new complaint in February 2010, in which it formally raised the Estoppel Claim. Plaintiff then amended its complaint in September 2010 to include the Oral Agreement Claim. Clark LHS, LLC responded by filing a motion for summary judgment, which the district court granted. The court ruled that the Estoppel Claim was barred by claim preclusion and that the Oral Agreement Claim was barred by both the statute of frauds and claim preclusion. Plaintiff appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 The central issue presented on appeal is whether the district court erred in granting summary judgment to Clark LHS, LLC based on the court's determination that the Oral Agreement Claim was barred by the statute of frauds. "[S]ummary judgment is appropriate only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 8, 301 P.3d 984 (omission in original) (quoting Utah R. Civ. P. 56(c)). To determine whether the district court's grant of summary judgment was correct, "we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference," *Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781, and we view "the facts and all reasonable inferences ... in the light most favorable to the nonmoving party," *McLaughlin v. Schenk*, 2013 UT 20, ¶ 20, 299 P.3d 1139 (citation and internal quotation marks omitted).[3]

¶ 10 To the extent that Plaintiff also appeals the district court's conclusion that the Estoppel Claim is barred by claim preclusion, Plaintiff has inadequately briefed this issue and has failed to meet its burden of demonstrating error. *See* Utah R.App. P. 24; *State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179 (observing that the appellate courts "may refuse, sua sponte, to consider inadequately briefed issues"); *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 ("Briefs that are not in compliance with Rule 24 may be disregarded ... by the court.").[4]

## ANALYSIS

¶ 11 Plaintiff argues that the district court erred by determining that the statute of frauds bars the Oral Agreement Claim. Plaintiff contends, first, that the statute of frauds is not implicated in this case and, second, that even if the statute of frauds applies, it is satisfied. Finally, Plaintiff asserts that the district court erred by reject-

---

3. Because we affirm the district court's ruling that the Oral Agreement Claim was barred by the statute of frauds, it is unnecessary for us to review the court's determination that claim preclusion also barred the Oral Agreement Claim.

4. In the "Statement of Issues on Appeal" section of its brief, Plaintiff presents the following question: "Did the trial court commit reversible error in finding that the *claims* brought by [Plaintiff] were barred because they were not brought and litigated in a prior lawsuit between these parties?" (Emphasis added.) From this, it appears that Plaintiff had intended to appeal both claims dismissed by the district court. However, Plaintiff discusses only the Oral Agreement Claim in the analysis portion of its opening brief and has therefore waived any challenge to the Estoppel Claim.

ing Plaintiff's argument that Clark LHS, LLC is estopped from raising a statute of frauds defense. We address each argument in turn.

## I. The Alleged Oral Agreement Implicates the Statute of Frauds.

¶ 12 Utah's statute of frauds provides,

Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing.

Utah Code Ann. § 25–5–3 (LexisNexis 2013).[5] Plaintiff argues that this section of the statute is not implicated because Plaintiff is not seeking to enforce an unfulfilled oral contract. Plaintiff asserts that the language of section 25–5–3 applies only to agreements which "are 'to be made.'" This provision, argues Plaintiff, "only acts to bar actions seeking to [en]force an executory, unfulfilled, uncompleted real estate transfer." Plaintiff points to the fact that the quitclaim deed to Lot 3 has "long been in writing, signed, notarized and delivered—and [is] now recorded." Accordingly, Plaintiff asserts that it is seeking to quiet title in Lot 3 based on an already—performed oral agreement that cannot be "rescinded after the fact."

■ ¶ 13 First, we disagree with Plaintiff that the Oral Agreement has already been performed. The contract at issue here was an oral agreement allegedly providing for additional grounds upon which ownership of Lot 3 could be transferred beyond those conditions expressly identified in the FRA, thus making the Oral Agreement a separate and distinct agreement from that created by the FRA. According to the record, the deed to Lot 3—the existence of which Plaintiff relies on as evidence of complete performance of the Oral Agreement—was conditionally delivered by Clark and was to be re-

corded only in connection with the terms of the written FRA. The FRA explicitly states that Clark was to "provide a quit claim deed to [Lot 3]" to Lenders and that they could record it only if they had "to bid their existing note or any part thereof to help protect" the Kaysville Parcel. The district court ruled that because Lenders were never forced to bid for the Kaysville Parcel, the conditions necessary for delivery of the property under the FRA were never triggered. According to the purported terms of the Oral Agreement, Clark *also* delivered the deed to Lot 3 as additional payment or collateral for Lenders' loan. However, Plaintiff has not shown from the record that it placed any admissible evidence before the district court that Clark performed under the Oral Agreement. For instance, Plaintiff claims that following the creation of the FRA, Cook testified that "Clark made the delivery absolute" by offering the deed as payment for the loan. However, Plaintiff neither identifies precisely when Cook so testified nor provides a transcript of that testimony.[6] Neither did Plaintiff support its opposition to summary judgment below with affidavit or deposition testimony from Cook that such performance took place. Therefore, even viewing the facts in the light most favorable to Plaintiff, we are unable to conclude that the Oral Agreement was actually performed or fulfilled.

■ ¶ 14 Second, the Oral Agreement, by its purported terms, is one that fits squarely within the statute of frauds. Utah Code section 25–5–3 expressly voids "[e]very contract" made "for the sale, of any lands, or any interest in lands" "unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the . . . sale is to be made." Thus, any contract conveying an interest in land in which the agreement has not been reduced to writing and signed by the person relinquishing the property is unenforceable. *Spears v. Warr,* 2002 UT 24, ¶ 22, 44 P.3d 742 ("Generally, a

---

5. Because this provision has remained unchanged since 1898, we cite the current version of the Utah Code Annotated as a convenience to the reader.

6. To the extent that Plaintiff argues for the admission of parol evidence regarding the Oral Agreement, this issue was not preserved and we do not address it. *See 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801.

conveyance of real property is within the statute of frauds and unenforceable absent a writing."); *Wilberg v. Hyatt,* 2012 UT App 233, ¶ 7, 285 P.3d 1249 ("Typically, the statute of frauds prohibits the enforcement of oral contracts for the conveyance of property." (citing Utah Code Ann. § 25–5–1 (LexisNexis 2007))); *cf. Needham v. Fannie Mae,* 854 F.Supp.2d 1145, 1153 (D.Utah 2012) (holding that a bank's alleged oral promise to negotiate a loan modification was "barred by the statute of frauds which requires that any contract establishing an interest in real property must be written to be enforceable" (citing Utah Code Ann. §§ 25–5–1, –3)). Because the Oral Agreement, by its purported terms, was a contract involving the transfer of an interest in land, we conclude that it falls squarely within section 25–5–3's purview. The statute of frauds is thus implicated. We now turn our attention to whether it was satisfied.

## II. The Statute of Frauds Was Not Satisfied.

■ ¶ 15 "To satisfy the statute of frauds, '[a]ll that is required is that the interest be granted or declared by a writing subscribed by the party to be charged.'" *Smith v. Osguthorpe,* 2002 UT App 361, ¶ 24, 58 P.3d 854 (alteration in original) (emphasis omitted) (quoting *Guinand v. Walton,* 22 Utah 2d 196, 450 P.2d 467, 469 (1969)). However, the writing must include " 'all the essential terms and provisions of the contract.'" *Coulter & Smith, Ltd. v. Russell,* 1999 UT App 55, ¶ 12, 976 P.2d 1218 (quoting *Birdzell v. Utah Oil Ref. Co.,* 121 Utah 412, 242 P.2d 578, 580 (1952)).

■ ¶ 16 Here, Plaintiff maintains that the quitclaim deed to Lot 3, which Clark delivered to Lenders immediately after entering into the FRA, satisfies the writing requirement of the statute of frauds. Plaintiff argues that "[t]here can be no more powerful and clear written memorandum of an agreement to transfer title to real estate than a written, signed, notarized and delivered deed." However, a copy of the quitclaim deed to Lot 3 is not included in the record. Without this crucial document, it is impossible for us to determine whether the

deed includes "all the essential terms and provisions" of the Oral Agreement. *See id.* (citation and internal quotation marks omitted). "[W]here we are without an adequate record, we must assume the regularity of the proceedings below." *Gorostieta v. Parkinson,* 2000 UT 99, ¶ 16, 17 P.3d 1110. Therefore, because Plaintiff has failed to present a sufficient writing evidencing the Oral Agreement, we must assume that the district court correctly determined that the statute of frauds was not satisfied on this ground.

## III. Clark LHS, LLC Is Not Estopped from Raising a Statute of Frauds Defense.

■ ¶ 17 "[A] party 'is estopped from asserting the statute of frauds as a defense only [if it has] expressly and unambiguously waived the right to do so.'" *Golden Meadows Props., LC v. Strand,* 2010 UT App 257, ¶ 23, 241 P.3d 375 (second alteration in original) (quoting *Stangl v. Ernst Home Ctr., Inc.,* 948 P.2d 356, 361 (Utah Ct.App.1997)). " '[T]he acts and conduct of the promissor must so clearly manifest an intention that he will not assert the statute that to permit him to do so would be to work a fraud upon the other party.'" *Id.* (alteration in original) (emphasis omitted) (quoting *Fericks v. Lucy Ann Soffe Trust,* 2004 UT 85, ¶ 14, 100 P.3d 1200). Plaintiff argues that Clark's failure "to request or sue for the return of the quit claim deeds and [Lenders'] cancellation of the trust deed foreclosure thereafter are all evidence that Clark did not intend to assert the statute of frauds." We disagree.

■ ¶ 18 Litigation concerning title to Lot 3 commenced in 2000. Plaintiff recorded the deeds in 2008. In 2009, the district court ruled that because the conditions necessary for delivery of the deed were never triggered, Plaintiff was never entitled to record it. Thus, it is apparent from the record that, contrary to Plaintiff's claim, Clark and Clark LHS, LLC have been actively involved in litigation over the delivery of and title to Lot 3 for more than a decade. Also, Plaintiff fails to explain why Lenders' cancellation of the trust deed foreclosure manifests an intention by Clark LHS, LLC to not assert a statute of frauds defense. Accordingly, we

cannot agree with Plaintiff that Clark LHS, LLC "expressly and unambiguously waived" its right to assert the statute of frauds. *Id.* (citation and internal quotation marks omitted). Clark LHS, LLC therefore was not estopped from raising the statute of frauds

## CONCLUSION

¶ 19 The district court correctly determined that the Oral Agreement Claim is barred by the statute of frauds. Plaintiff failed to adequately brief the Estoppel Claim and has therefore failed to demonstrate error in the district court's ruling. We affirm the district court's grant of summary judgment in favor of Clark LHS, LLC.